## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PAUL WILLIAMS,

                            Plaintiff,

       v.

CARSON CONCRETE CORPORATION;
CARCO CONSTRUCTION
CORPORATION; HUNTER ROBERTS
CONSTRUCTION GROUP, LLC; and
ANTHONY J. SAMANGO, JR.,

                       Defendants.

Case No. _____

## COMPLAINT

## PARTIES

1.     Plaintiff, Paul Williams, is an adult individual and current resident of the Commonwealth of Pennsylvania, whose address is 1011 New Hope Street, Apartment 68C, Norristown, PA 19401.

2.     Defendants, Carson Concrete Corporation and/or Carco Construction Corporation, is a Pennsylvania corporation with its principal place of business at 5 Creek Parkway, Boothwyn, Pennsylvania 19061.

3.     Defendants, Carson Concrete Corporation and/or Carco Construction Corporation, are in the business of constructing skyscrapers and/or other high-rises, including previously Citizen's Bank Park, One and Two Liberty Place, and luxury high-rise condominiums in Rittenhouse Square, for example.  Defendants hire certified tower crane operators, like the Plaintiff, for the purpose of constructing skyscrapers and/or other high-rises, at various jobsites.

4.     Defendant, Hunter Roberts Construction Group, LLC, is a corporation organized and existing in the Commonwealth of Pennsylvania, with a corporate office address located at 1717 Arch Street, 34th Floor, Philadelphia, PA 19103.

5.     Defendant, Hunter Roberts Construction Group, LLC, employed Mr. Gerald Green, at all times relevant hereto, as Senior Project Manager.

6.     Defendant, Hunter Roberts Construction Group, LLC, controlled the jobsite or jobsites at issue, and contracted with Defendant, Carson Concrete Corporation, for the purpose of constructing skyscrapers and other high-rises.

7.     Tower-crane operators require certification, the role is highly specialized, requires highly particularized skill and expertise, and is a well-paying and sought-after position in the industry, paying a traditional base rate of approximately $56.00 an hour, with the possibility for advancement and pay increases, availability of overtime, time-and-a-half, and double-time – traditionally, Saturdays are all time-and-a-half, and Sundays are all double-time.

8.     Anthony J. Samango, Jr. ("Mr. Samango"), is the sole Owner and President of Defendants, Carson Concrete Corporation and/or Carco Construction Corporation, located at 5 Creek Parkway, Boothwyn, Pennsylvania 19061.

## JURISDICTION AND VENUE

9.     This Court has subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 because the claims present a federal question.

10.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state-law claims as those claims arise out of the same set of operative facts as the federal claims.

11.     This Court has jurisdiction over Defendants because Defendants' contacts with this state and judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Company v. State of Washington</u>, 326 U.S. 310 (1945), and its progeny.

12.     Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(1)-(b)(2) because Defendants reside in and/or conduct business in this judicial district, and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

13.     At all times relevant hereto, Defendants each employed fifteen (15) or more persons for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

14.     Plaintiff has exhausted all applicable administrative remedies and the pertinent notice of right-to-sue in this matter is attached hereto as Exhibit "A."

## CLAIMS FOR RELIEF

### COUNT I:
### FAILURE-TO-HIRE BASED ON RACE AND/OR COLOR IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000*e*, <u>et seq.</u>
### (Plaintiff v. Defendants, Carson Concrete Corporation and Carco Construction <u>Corporation</u>)

15.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

16.     Plaintiff was qualified for the position to which he applied, expressed interest, and sought to hold.

17.     Plaintiff has been certified by the National Commission for the Certification of Crane Operators ("NCCCO"), since in or around 2003, and has approximately nineteen (19) to

twenty (20) years of experience as a tower crane operator, including his apprenticeship, on skyscrapers and other high-rise buildings.

18.     Plaintiff is a licensed crane operator in both Pennsylvania and New Jersey.

19.     During Plaintiff's years of experience working as a tower crane operator Plaintiff has never been involved in an accident.

20.     Plaintiff also has a Commercial Driver's License ("CDL").

21.     In addition to being highly qualified, as above, Plaintiff is also a union employee.

22.     Plaintiff's local union recommended to Plaintiff that he apply for available positions with the Defendant, Carson Concrete Corporation, and the local union did so on account of Plaintiff's qualifications and experience.

23.     Plaintiff expressed interest in, and was rejected for a position as a tower crane operator by Defendants on account of race and/or color, in violation of Title VII of the Civil Rights Act of 1964.

24.     Defendant, Carson Concrete Corporation, is believed, as a Federally-assisted construction contractor, to be required under Federal law, including, *inter alia*, Executive Order 11246, to create an affirmative action program, meet certain affirmative action requirements, and/or meet certain minority participation requirements, to ensure equal opportunity.

25.     Upon information and belief, Defendant, Carson Concrete Corporation, does _not_ sufficiently meet the standards and requirements for affirmative action, equal employment opportunity, and/or minority participation, with respect to applicants and employees of Federally-assisted construction contractors.  Defendant, Carson Concrete Corporation, does _not_, upon information and belief, have sufficient minority participation per trade, and not just with respect to, for example, the lower-echelon positions such as laborer positions.

26.     Upon information and belief, Defendants had available positions for tower crane operator at a jobsite for what is now the Arthaus, a 47-story skyscraper consisting of luxury high-rise residences, at Broad and Spruce Streets (the Arthaus jobsite); and for a jobsite for what is now The Laurel Rittenhouse Square, 1911 Walnut Street, a luxury high-rise which was being erected at the time in Rittenhouse Square (the Rittenhouse Square jobsite).

27.     Upon information and belief, Defendants did not post or circulate a job opening for the position of tower crane operator at either project.

28.     After hearing that Carson Concrete Corporation was seeking applicants for tower crane operator, Plaintiff spoke with Mr. Gerald Green, Senior Project Manager, for the projects in question hiring tower crane operators, on or about September 11, 2019, in person at the Rittenhouse Square jobsite.  Mr. Green represented there was an open position for tower crane operator with Carson Concrete Corporation, and that Plaintiff should contact Mr. Samango.

29.     On or about September 11, 2019, Plaintiff called Mr. Samango who confirmed to Plaintiff, on the phone, on September 11, 2019, that Mr. Samango was seeking applicants for tower crane operator, that he did not have anyone in mind yet, that he would keep the Plaintiff's phone number, and that he would be in contact.  Plaintiff did not receive a call back.

30.     On or about November 19, 2019, Plaintiff followed up with Carson Concrete Corporation, in person, at its main office location in Boothwyn, Pennsylvania.  Nobody was available to speak with the Plaintiff at that time except for the secretary or receptionist.  Plaintiff spoke with Ms. Natalie Last Name Unknown ("LNU"), secretary or receptionist at the Defendants' company.  Plaintiff did not receive a response from Natalie LNU about whether the position had been filled or not at that time.  Plaintiff inquired about the specific application

process, or steps necessary to be considered for a position, at Carson Concrete Corporation. Natalie LNU stated to Plaintiff that there was *not* a written application to fill out.

31.     Plaintiff also went to the jobsite for the Arthaus, one of the projects in question hiring tower crane operators, in or around November 19, 2019, and spoke with Mr. Bobby Hart, Foreman.

32.     On or about November 19, 2019, Plaintiff also followed up with Mr. Green, Senior Project Manager, for one of the projects in question hiring tower crane operators, in person, again inquiring about whether there was an open position for tower crane operator.  Mr. Green stated to Plaintiff, "Yes, there is, but we can't force Anthony to hire who we want," or words to that effect.

33.     On or about December 5, 2019, Plaintiff followed up with an e-mail to Mr. Samango, Owner and President, inquiring about a position; Plaintiff sent a separate email to Mr. Hart, Foreman for one of the projects in question, inquiring about a position; and Plaintiff sent a third email to Natalie LNU, the secretary/receptionist with whom Plaintiff had previously spoken at Carson Concrete Corporation.  Plaintiff requested to be considered for employment as a tower crane operator.  Plaintiff received no response to any of his emails from Mr. Samango, Mr. Hart, or Natalie.

34.     Plaintiff recollects and believes that, a few weeks later – approximately two (2) to three (3) weeks later – Mr. Derrick Hawthorne, White/Caucasian, was hired by Defendant, Carson Concrete Corporation, to a position of tower crane operator.

35.     Plaintiff recollects and believes that, a few weeks later – approximately two (2) to three (3) weeks later, during the same subject timeframe – Mr. Bobby Hawn, White/Caucasian,

was transferred from Mr. Hawn's position to another tower crane operator position, a decision that was made by the Defendant, Carson Concrete Corporation.

36.     Plaintiff recollects and believes that when Mr. Hawn was moved from one crane to another crane, it is believed Mr. Robert Hammell was hired by the Defendant, Carson Concrete Corporation, and assigned to Mr. Hawn's previously-assigned crane.  Plaintiff recollects and believes Mr. Hammell, who is White/Caucasian, is the son of and biologically related to the hiring hall agent for Plaintiff's union, who is also White/Caucasian, and who is believed to have referred his son for the position to Defendant, Mr. Samango.

37.     All three (3) White/Caucasian employees had less experience than and were less qualified than the Plaintiff.

38.     Mr. Hawn, for example, is not believed to have had a license/certification as long as Plaintiff has, and is not believed to have operated as many tower cranes as the Plaintiff has.

39.     Mr. Hawthorne is also not believed to have had a license/certification as long as Plaintiff has, is not believed to have operated as many tower cranes as the Plaintiff has, and there are believed to have been a complaint or multiple complaints made about Mr. Hawthorne operating tower cranes by his other co-employees.

40.     Defendant, Mr. Samango, submitted a Position Statement to the Equal Employment Opportunity Commission ("EEOC"), attached as Exhibit "B" to this Complaint, confirming that Plaintiff did stop by Carson Concrete Corporation, Mr. Samango identifies two (2) projects in question hiring tower crane operators, and Mr. Samango stated:

> We had two Tower Crane operators employed at the Broad Street project, one was an African American. [*sic.*]  This demonstrates/confirms that we do not discriminate as to Race [*sic.*] or Color [*sic.*] as Mr. Williams alleges.

Mr. Williams inquired about a tower crane operators [*sic*] position at 1911 Walnut St. and was told those positions had been filled he was not discriminated against he simply was too late applying for the position. [*sic.*]

<u>See</u> Position Statement of Defendant, Anthony J. Samango, attached hereto as Exhibit "B."

41.     Mr. Samango's Position Statement – his representations to the EEOC – are inconsistent, and pretextual, as it was communicated to Plaintiff that there was no formal application process including for tower crane operator at the relevant time; Plaintiff was previously told inconsistently by Mr. Samango that there was an open position for tower crane operator for which he was seeking applicants, he would keep Plaintiff's number, and he would call the Plaintiff back, which he did <u>*not*</u>; Plaintiff was told by Mr. Green that there was an open position for tower crane operator; and Mr. Samango's statement that of its tower crane operators employed at the project in question, "one was an African American" [*sic.*], using the phrase, "African-American," as a noun rather than an adjective, does not "confirm," in Defendant Samango's words, that Defendants "do not discriminate as to Race [*sic.*] or Color [*sic.*] as Mr. Williams alleges."

42.     Plaintiff alleges a claim of individual disparate treatment – discrimination is an individual claim – such that, simply because Defendants have represented that, of its tower crane operators at the project or projects in question, "one was an African American" [*sic*], this does not "confirm" that Defendants could not have discriminated individually against the Plaintiff on account of his own race, and/or that the Defendants could not have taken race into account in their employment decisions for tower crane operators with respect to the project or projects in question in the instant matter; and/or for that matter that the Defendants could not have individually discriminated against other African-American and/or Black applicants and/or employees previously.

8

43.     There is no policy of non-discrimination, anti-harassment, and/or non-retaliation which is posted online by the Defendants, on their website; there was no such policy provided to the Equal Employment Opportunity Commission ("EEOC") in this matter; and there was no representation to the EEOC in this matter that Defendants have such a policy.

44.     There is no equal opportunity employer designation or its equivalent which is conspicuously available online as applicable to the Defendants.

45.     There is not believed to be African-American or Black employees who are employed in tower crane operator and/or equivalent positions by the Defendants, except for the one (1) other individual who is permitted to operate cranes, as stated above, and it is believed one (1) other individual who is believed to be a laborer foreman, which is considered one of the lower-echelon positions.  This was at only one of the two jobsites in question.

46.     It is believed African-American and/or Black employees are routinely hired to laborer and/or equivalent positions, by the Defendants, but these are considered the lower echelons of the positions available at Defendants' companies.

47.     Tower-crane operators require certification, the role is highly specialized, requires highly particularized skill and expertise, and is a well-paying and sought-after position in the industry, paying a traditional base rate of approximately $56.00 an hour, with the possibility for advancement and pay increases, availability of overtime, time-and-a-half, and double-time – traditionally, Saturdays are all time-and-a-half, and Sundays are all double-time.  Plaintiff was deprived of valuable employment opportunities by the Defendants on account of discrimination.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime pay, double-time pay, benefits, bonuses, commissions, any

promotions and pay increases Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, humiliation, embarrassment, inconvenience, and loss of life's pleasures; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief to enjoin the Defendants from discriminating against applicants and employees on the basis of race; and for the Defendants to adopt, develop, and implement an appropriate affirmative action plan, to recruit African-American applicants, hire and promote qualified people of color and minorities to positions at Defendants' company including specifically tower crane operator; and/or other affirmative action measures as appropriate, and which the Court determines to be fair, just, and equitable, in order to afford equality of opportunity in employment to people of color and minorities at Defendants' company; for Defendants to adopt, post, and disseminate a non-discrimination, anti-harassment, and non-retaliation policy, which explicitly extends to hiring, promotion, pay, and any and all other employment practices and decisions, at Defendants' company; for all of Defendants' employees including all supervisors/managers to be trained about race discrimination; for Defendants to create a fair and equitable, formal application process, which is merit-based, including requiring the creation of a written application form, which can be filled out and submitted upon an applicant's request; requiring that Defendants conspicuously post available positions, along with any and all minimum and/or preferred qualifications, a clear written statement about how an applicant should apply and/or express interest in any available position, a date contained on the posting, and a deadline for application submissions contained conspicuously on the posting; for Defendants to post an equal opportunity employer ("EOE") notice on any and all job postings, and on Defendants' website; for Defendants to post a non-discrimination, anti-harassment, and non-retaliation policy on the Defendants' website; for

Defendants to post notice of the verdict in this matter; and to provide a neutral employment reference for Plaintiff.

## COUNT II:
## FAILURE-TO-HIRE BASED ON RACE IN VIOLATION OF 42 U.S.C. § 1981
## (Plaintiff v. All Defendants)

48.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

49.     Upon information and belief, Defendants did not post or circulate a job opening for the position of tower crane operator at either project.

50.     After hearing that Carson Concrete Corporation was seeking applicants for tower crane operator, Plaintiff spoke with Mr. Gerald Green, Senior Project Manager, for the projects in question hiring tower crane operators, on or about September 11, 2019, in person at the Rittenhouse Square jobsite.  Mr. Green represented there was an open position for tower crane operator with Carson Concrete Corporation, and that Plaintiff should contact Mr. Samango.

51.     On or about September 11, 2019, Plaintiff called Mr. Samango who confirmed to Plaintiff, on the phone, on September 11, 2019, that Mr. Samango was seeking applicants for tower crane operator, that he did not have anyone in mind yet, that he would keep the Plaintiff's phone number, and that he would be in contact.  Plaintiff did not receive a call back.

52.     On or about November 19, 2019, Plaintiff followed up with Carson Concrete Corporation, in person, at its main office location in Boothwyn, Pennsylvania.  Nobody was available to speak with the Plaintiff at that time except for the secretary or receptionist.  Plaintiff spoke with Ms. Natalie Last Name Unknown ("LNU"), secretary or receptionist at the Defendants' company.  Plaintiff did not receive a response from Natalie LNU about whether the position had been filled or not at that time.  Plaintiff inquired about the specific application

process, or steps necessary to be considered for a position, at Carson Concrete Corporation. Natalie LNU stated to Plaintiff that there was *not* a written application to fill out.

53.     Plaintiff also went to the jobsite for the Arthaus, one of the projects in question hiring tower crane operators, in or around November 19, 2019, and spoke with Mr. Bobby Hart, Foreman.

54.     On or about November 19, 2019, Plaintiff also followed up with Mr. Green, Senior Project Manager, for one of the projects in question hiring tower crane operators, in person, again inquiring about whether there was an open position for tower crane operator.  Mr. Green stated to Plaintiff, "Yes, there is, but we can't force Anthony to hire who we want," or words to that effect.

55.     On or about December 5, 2019, Plaintiff followed up with an e-mail to Mr. Samango, Owner and President, inquiring about a position; Plaintiff sent a separate email to Mr. Hart, Foreman for one of the projects in question, inquiring about a position; and Plaintiff sent a third email to Natalie LNU, the secretary/receptionist with whom Plaintiff had previously spoken at Carson Concrete Corporation.  Plaintiff requested to be considered for employment as a tower crane operator.  Plaintiff received no response to any of his emails from Mr. Samango, Mr. Hart, or Natalie.

56.     Plaintiff recollects and believes that, a few weeks later – approximately two (2) to three (3) weeks later – Mr. Derrick Hawthorne, White/Caucasian, was hired by Defendant, Carson Concrete Corporation, to a position of tower crane operator.

57.     Plaintiff recollects and believes that, a few weeks later – approximately two (2) to three (3) weeks later, during the same subject timeframe – Mr. Bobby Hawn, White/Caucasian,

was transferred from Mr. Hawn's position to another tower crane operator position, a decision that was made by the Defendant, Carson Concrete Corporation.

58.     Plaintiff recollects and believes that when Mr. Hawn was moved from one crane to another crane, it is believed Mr. Robert Hammell was hired by the Defendant, Carson Concrete Corporation, and assigned to Mr. Hawn's previously-assigned crane.  Plaintiff recollects and believes Mr. Hammell, who is White/Caucasian, is the son of and biologically related to the hiring hall agent for Plaintiff's union, who is also White/Caucasian, and who is believed to have referred his son for the position to Defendant, Mr. Samango.

59.     All three (3) White/Caucasian employees had less experience than and were less qualified than the Plaintiff.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime pay, double-time pay, benefits, bonuses, commissions, any promotions and pay increases Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, humiliation, embarrassment, inconvenience, and loss of life's pleasures; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief to enjoin the Defendants from discriminating against applicants and employees on the basis of race; and for the Defendants to adopt, develop, and implement an appropriate affirmative action plan, to recruit African-American applicants, hire and promote qualified people of color and minorities to positions at Defendants' company including specifically tower crane operator; and/or other affirmative action measures as appropriate, and which the Court determines to be fair, just, and equitable, in order to afford equality of opportunity in employment to people of color and minorities at Defendants'

company; for Defendants to adopt, post, and disseminate a non-discrimination, anti-harassment, and non-retaliation policy, which explicitly extends to hiring, promotion, pay, and any and all other employment practices and decisions, at Defendants' company; for all of Defendants' employees including all supervisors/managers to be trained about race discrimination; for Defendants to create a fair and equitable, formal application process, which is merit-based, including requiring the creation of a written application form, which can be filled out and submitted upon an applicant's request; requiring that Defendants conspicuously post available positions, along with any and all minimum and/or preferred qualifications, a clear written statement about how an applicant should apply and/or express interest in any available position, a date contained on the posting, and a deadline for application submissions contained conspicuously on the posting; for Defendants to post an equal opportunity employer ("EOE") notice on any and all job postings, and on Defendants' website; for Defendants to post a non-discrimination, anti-harassment, and non-retaliation policy on the Defendants' website; for Defendants to post notice of the verdict in this matter; and to provide a neutral employment reference for Plaintiff.

**COUNT III:**
**FAILURE-TO-HIRE BASED ON RACE IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT ("PHRA"), 43 P.S. §§ 951-963**
**(Plaintiff v. Defendants, Carson Concrete Corporation, Carco Construction Corporation, and Anthony J. Samango, Jr.)**

60.    All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

61.    Upon information and belief, Defendants did not post or circulate a job opening for the position of tower crane operator at either project.

62.     After hearing that Carson Concrete Corporation was seeking applicants for tower crane operator, Plaintiff spoke with Mr. Gerald Green, Senior Project Manager, for the projects in question hiring tower crane operators, on or about September 11, 2019, in person at the Rittenhouse Square jobsite.  Mr. Green represented there was an open position for tower crane operator with Carson Concrete Corporation, and that Plaintiff should contact Mr. Samango.

63.     On or about September 11, 2019, Plaintiff called Mr. Samango who confirmed to Plaintiff, on the phone, on September 11, 2019, that Mr. Samango was seeking applicants for tower crane operator, that he did not have anyone in mind yet, that he would keep the Plaintiff's phone number, and that he would be in contact.  Plaintiff did not receive a call back.

64.     On or about November 19, 2019, Plaintiff followed up with Carson Concrete Corporation, in person, at its main office location in Boothwyn, Pennsylvania.  Nobody was available to speak with the Plaintiff at that time except for the secretary or receptionist.  Plaintiff spoke with Ms. Natalie Last Name Unknown ("LNU"), secretary or receptionist at the Defendants' company.  Plaintiff did not receive a response from Natalie LNU about whether the position had been filled or not at that time.  Plaintiff inquired about the specific application process, or steps necessary to be considered for a position, at Carson Concrete Corporation.  Natalie LNU stated to Plaintiff that there was *not* a written application to fill out.

65.     Plaintiff also went to the jobsite for the Arthaus, one of the projects in question hiring tower crane operators, in or around November 19, 2019, and spoke with Mr. Bobby Hart, Foreman.

66.     On or about November 19, 2019, Plaintiff also followed up with Mr. Green, Senior Project Manager, for one of the projects in question hiring tower crane operators, in person, again inquiring about whether there was an open position for tower crane operator.  Mr.

Green stated to Plaintiff, "Yes, there is, but we can't force Anthony to hire who we want," or words to that effect.

67.     On or about December 5, 2019, Plaintiff followed up with an e-mail to Mr. Samango, Owner and President, inquiring about a position; Plaintiff sent a separate email to Mr. Hart, Foreman for one of the projects in question, inquiring about a position; and Plaintiff sent a third email to Natalie LNU, the secretary/receptionist with whom Plaintiff had previously spoken at Carson Concrete Corporation.  Plaintiff requested to be considered for employment as a tower crane operator.  Plaintiff received no response to any of his emails from Mr. Samango, Mr. Hart, or Natalie.

68.     Plaintiff recollects and believes that, a few weeks later – approximately two (2) to three (3) weeks later – Mr. Derrick Hawthorne, White/Caucasian, was hired by Defendant, Carson Concrete Corporation, to a position of tower crane operator.

69.     Plaintiff recollects and believes that, a few weeks later – approximately two (2) to three (3) weeks later, during the same subject timeframe – Mr. Bobby Hawn, White/Caucasian, was transferred from Mr. Hawn's position to another tower crane operator position, a decision that was made by the Defendant, Carson Concrete Corporation.

70.     Plaintiff recollects and believes that when Mr. Hawn was moved from one crane to another crane, it is believed Mr. Robert Hammell was hired by the Defendant, Carson Concrete Corporation, and assigned to Mr. Hawn's previously-assigned crane.  Plaintiff recollects and believes Mr. Hammell, who is White/Caucasian, is the son of and biologically related to the hiring hall agent for Plaintiff's union, who is also White/Caucasian, and who is believed to have referred his son for the position to Defendant, Mr. Samango.

71.     All three (3) White/Caucasian employees had less experience than and were less qualified than the Plaintiff.

72.     Defendant, Mr. Samango, discriminated against Plaintiff by failing to hire Plaintiff on account of race.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime pay, double-time pay, benefits, bonuses, commissions, any promotions and pay increases Plaintiff would have received; compensatory damages for pain and suffering, mental anguish, humiliation, embarrassment, inconvenience, and loss of life's pleasures; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief to enjoin the Defendants from discriminating against applicants and employees on the basis of race; and for the Defendants to adopt, develop, and implement an appropriate affirmative action plan, to recruit African-American applicants, hire and promote qualified people of color and minorities to positions at Defendants' company including specifically tower crane operator; and/or other affirmative action measures as appropriate, and which the Court determines to be fair, just, and equitable, in order to afford equality of opportunity in employment to people of color and minorities at Defendants' company; for Defendants to adopt, post, and disseminate a non-discrimination, anti-harassment, and non-retaliation policy, which explicitly extends to hiring, promotion, pay, and any and all other employment practices and decisions, at Defendants' company; for all of Defendants' employees including all supervisors/managers to be trained about race discrimination; for Defendants to create a fair and equitable, formal application process, which is merit-based, including requiring the creation of a written application form, which can be filled out and

submitted upon an applicant's request; requiring that Defendants conspicuously post available positions, along with any and all minimum and/or preferred qualifications, a clear written statement about how an applicant should apply and/or express interest in any available position, a date contained on the posting, and a deadline for application submissions contained conspicuously on the posting; for Defendants to post an equal opportunity employer ("EOE") notice on any and all job postings, and on Defendants' website; for Defendants to post a non-discrimination, anti-harassment, and non-retaliation policy on the Defendants' website; for Defendants to post notice of the verdict in this matter; and to provide a neutral employment reference for Plaintiff.

### COUNT IV:
**FAILURE-TO-HIRE BASED ON RACE IN VIOLATION OF THE PHILADELPHIA FAIR PRACTICES ORDINANCE ("PFPO"), AT CHAPTER 9-1100 OF THE PHILADELPHIA CODE (Plaintiff v. Defendants, Carson Concrete Corporation, Carco Construction Corporation, and Anthony J. Samango, Jr.)**

73.     All of the foregoing paragraphs are hereby incorporated as if the same were more fully set forth herein at length.

74.     Upon information and belief, Defendants did not post or circulate a job opening for the position of tower crane operator at either project.

75.     After hearing that Carson Concrete Corporation was seeking applicants for tower crane operator, Plaintiff spoke with Mr. Gerald Green, Senior Project Manager, for the projects in question hiring tower crane operators, on or about September 11, 2019, in person at the Rittenhouse Square jobsite.  Mr. Green represented there was an open position for tower crane operator with Carson Concrete Corporation, and that Plaintiff should contact Mr. Samango.

76.     On or about September 11, 2019, Plaintiff called Mr. Samango who confirmed to Plaintiff, on the phone, on September 11, 2019, that Mr. Samango was seeking applicants for

tower crane operator, that he did not have anyone in mind yet, that he would keep the Plaintiff's phone number, and that he would be in contact.  Plaintiff did not receive a call back.

77.     On or about November 19, 2019, Plaintiff followed up with Carson Concrete Corporation, in person, at its main office location in Boothwyn, Pennsylvania.  Nobody was available to speak with the Plaintiff at that time except for the secretary or receptionist.  Plaintiff spoke with Ms. Natalie Last Name Unknown ("LNU"), secretary or receptionist at the Defendants' company.  Plaintiff did not receive a response from Natalie LNU about whether the position had been filled or not at that time.  Plaintiff inquired about the specific application process, or steps necessary to be considered for a position, at Carson Concrete Corporation. Natalie LNU stated to Plaintiff that there was *not* a written application to fill out.

78.     Plaintiff also went to the jobsite for the Arthaus, one of the projects in question hiring tower crane operators, in or around November 19, 2019, and spoke with Mr. Bobby Hart, Foreman.

79.     On or about November 19, 2019, Plaintiff also followed up with Mr. Green, Senior Project Manager, for one of the projects in question hiring tower crane operators, in person, again inquiring about whether there was an open position for tower crane operator.  Mr. Green stated to Plaintiff, "Yes, there is, but we can't force Anthony to hire who we want," or words to that effect.

80.     On or about December 5, 2019, Plaintiff followed up with an e-mail to Mr. Samango, Owner and President, inquiring about a position; Plaintiff sent a separate email to Mr. Hart, Foreman for one of the projects in question, inquiring about a position; and Plaintiff sent a third email to Natalie LNU, the secretary/receptionist with whom Plaintiff had previously spoken at Carson Concrete Corporation.  Plaintiff requested to be considered for employment as a tower

crane operator.  Plaintiff received no response to any of his emails from Mr. Samango, Mr. Hart, or Natalie.

81.     Plaintiff recollects and believes that, a few weeks later – approximately two (2) to three (3) weeks later – Mr. Derrick Hawthorne, White/Caucasian, was hired by Defendant, Carson Concrete Corporation, to a position of tower crane operator.

82.     Plaintiff recollects and believes that, a few weeks later – approximately two (2) to three (3) weeks later, during the same subject timeframe – Mr. Bobby Hawn, White/Caucasian, was transferred from Mr. Hawn's position to another tower crane operator position, a decision that was made by the Defendant, Carson Concrete Corporation.

83.     Plaintiff recollects and believes that when Mr. Hawn was moved from one crane to another crane, it is believed Mr. Robert Hammell was hired by the Defendant, Carson Concrete Corporation, and assigned to Mr. Hawn's previously-assigned crane.  Plaintiff recollects and believes Mr. Hammell, who is White/Caucasian, is the son of and biologically related to the hiring hall agent for Plaintiff's union, who is also White/Caucasian, and who is believed to have referred his son for the position to Defendant, Mr. Samango.

84.     All three (3) White/Caucasian employees had less experience than and were less qualified than the Plaintiff.

85.     Defendant, Mr. Samango, discriminated against Plaintiff by failing to hire Plaintiff on account of race.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants, in an amount in excess of $150,000.00, which will fully and fairly compensate Plaintiff for any and all back and front pay, overtime pay, double-time pay, benefits, bonuses, commissions, any promotions and pay increases Plaintiff would have received; compensatory damages for pain and

suffering, mental anguish, humiliation, embarrassment, inconvenience, and loss of life's pleasures; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief to enjoin the Defendants from discriminating against applicants and employees on the basis of race; and for the Defendants to adopt, develop, and implement an appropriate affirmative action plan, to recruit African-American applicants, hire and promote qualified people of color and minorities to positions at Defendants' company including specifically tower crane operator; and/or other affirmative action measures as appropriate, and which the Court determines to be fair, just, and equitable, in order to afford equality of opportunity in employment to people of color and minorities at Defendants' company; for Defendants to adopt, post, and disseminate a non-discrimination, anti-harassment, and non-retaliation policy, which explicitly extends to hiring, promotion, pay, and any and all other employment practices and decisions, at Defendants' company; for all of Defendants' employees including all supervisors/managers to be trained about race discrimination; for Defendants to create a fair and equitable, formal application process, which is merit-based, including requiring the creation of a written application form, which can be filled out and submitted upon an applicant's request; requiring that Defendants conspicuously post available positions, along with any and all minimum and/or preferred qualifications, a clear written statement about how an applicant should apply and/or express interest in any available position, a date contained on the posting, and a deadline for application submissions contained conspicuously on the posting; for Defendants to post an equal opportunity employer ("EOE") notice on any and all job postings, and on Defendants' website; for Defendants to post a non-discrimination, anti-harassment, and non-retaliation policy on the Defendants' website; for

Defendants to post notice of the verdict in this matter; and to provide a neutral employment reference for Plaintiff.

## REQUEST FOR RELIEF

86.     Plaintiff requests any and all back and front pay, overtime pay, double-time pay, benefits, bonuses, commissions, any promotions and pay increases Plaintiff would have received, but for Defendants' discrimination.

87.     Plaintiff requests compensatory damages for pain and suffering, mental anguish, humiliation, embarrassment, inconvenience, and loss of life's pleasures.

88.     Plaintiff requests punitive damages to deter Defendants and other employers from similar misconduct in the future.

89.     Plaintiff requests pre- and post-judgment interest, reasonable attorneys' fees, and costs of suit.

90.     Plaintiff seeks equitable/injunctive relief including the following relief:

  a.     To enjoin the Defendants from discriminating against applicants and employees on the basis of race;

  b.     For the Defendants to adopt, develop, and implement an appropriate affirmative action plan, to recruit African-American applicants, hire and promote qualified people of color and minorities to positions at Defendants' company including specifically tower crane operator;

  c.     Other affirmative action measures as appropriate, and which the Court determines to be fair, just, and equitable, in order to afford equality of opportunity in employment to people of color and minorities at Defendants' company;

d.     For Defendants to adopt, post, and disseminate a non-discrimination, anti-harassment, and non-retaliation policy, which explicitly extends to hiring, promotion, pay, and any and all other employment practices and decisions, at Defendants' company;

e.     For all of Defendants' employees including all supervisors/managers to be trained about race discrimination;

f.     For Defendants to create a fair and equitable, formal application process, which is merit-based, including requiring the creation of a written application form, which can be filled out and submitted upon an applicant's request;

g.     Requiring that Defendants conspicuously post available positions, along with any and all minimum and/or preferred qualifications, a clear written statement about how an applicant should apply and/or express interest in any available position, a date contained on the posting, and a deadline for application submissions contained conspicuously on the posting;

h.     For Defendants to post an equal opportunity employer ("EOE") notice on any and all job postings, and on Defendants' website;

i.     For Defendants to post a non-discrimination, anti-harassment, and non-retaliation policy on the Defendants' website;

j.     For Defendants to post notice of the verdict in this matter, and

k.     To provide a neutral employment reference for Plaintiff.

## JURY DEMAND

Plaintiff hereby requests a trial by jury of eight (8) members on all counts so triable.

Respectfully submitted,


**THE LAW OFFICES OF ERIC A. SHORE, P.C.**


DATED:  <u>11/08/2020</u>          BY: _____

**JUSTIN F. ROBINETTE, ESQUIRE**
Two Penn Center
1500 JFK Boulevard, Suite 1240
Philadelphia, PA 19102
Tel:  (215) 944-6121
Fax: (215) 944-6124
E-mail: <u>JustinR@ericshore.com</u>

*Attorney for Plaintiff*