IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PAUL WILLIAMS,**<br>           **Plaintiff,**<br><br>           v.<br><br>**CARSON CONCRETE CORPORATION, CARCO CONSTRUCTION CORPORATION, HUNTER ROBERTS CONSTRUCTION GROUP, LLC AND ANTHONY J. SAMANGO, JR.,**<br>           **Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO.  20-5569** |

**MEMORANDUM OPINION**

In this employment action, Plaintiff Paul Williams sues Carson Concrete Corporation ("Carson"), Carco Construction Corporation ("Carco"), Hunter Roberts Construction Group, LLC ("Hunter"), and Anthony J. Samango, Jr. (collectively, "Defendants").  He alleges that Defendants failed to hire him for a tower crane operator position because of his race, in violation of various anti-discrimination employment statutes.  Carson, Carco, and Samango (collectively, the "Carson Defendants") have filed a joint Motion to Dismiss Plaintiff's claims.  Hunter has filed a separate Motion to Dismiss.

**I.     BACKGROUND** [1]

Plaintiff is a Black man who is licensed as a crane operator in Pennsylvania and New Jersey and who has nineteen to twenty years of experience as a tower crane operator on skyscrapers and other high-rise buildings.  Defendant Carson, a Pennsylvania-based construction company, was building two luxury high rises in Philadelphia—on the "Arthaus jobsite" and the "Rittenhouse jobsite."  Although Carson had not posted or circulated any crane operator jobs for

---

[1] These facts are drawn from Plaintiff's Amended Complaint (the "Complaint") and are taken as true for purposes of these Motions.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

these sites, on the suggestion of his union and his understanding that there were available jobs at both sites, he asked around. Specifically, he visited the Rittenhouse jobsite and spoke to Gerald Green, a Senior Project Manager employed by Defendant Hunter, who told him Carson had an open tower crane operator position and that Plaintiff should contact Carson's owner, Defendant Samango. Plaintiff called Samango, who confirmed that he was seeking tower crane operator applicants and did not yet have anyone in mind. Although Samango took Plaintiff's phone number and said he would be in touch, he did not call Plaintiff back.

Undeterred, a few weeks later, Plaintiff followed up with a visit to Carson's main office. He spoke to Carson's secretary, seeking information about the application process. She told him that there was no written application. He then followed up with Green who told him a tower crane operator position was still open but that "we can't force [Samango] to hire who we want." The next month Plaintiff e-mailed Samango, Hart, and Carson's secretary separately, again requesting that he be considered for a tower crane operator position. He received no response. A few weeks later, Carson hired two tower crane operators, both of whom are White.

When he learned of these hires, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Carson had engaged in race and color discrimination against Plaintiff. On August 6, 2020, the EEOC notified Plaintiff of his right to sue.

## II.     LEGAL STANDARD

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint's factual allegations are accepted

as true and all reasonable inferences are drawn in the plaintiff's favor. *N.J. Carpenters & the Trs. Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014). "[R]ote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements," on the other hand, are disregarded. *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the plaintiff is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DISCUSSION

Plaintiff brings claims for race discrimination based on a failure to hire, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951, *et seq.* ("PHRA"), the Philadelphia Fair Practices Ordinance, Phila. Code, § 9-1101 ("PFPO"), and 42 U.S.C. § 1981. Against Carson and Carco, Plaintiff asserts Title VII, PHRA, PFPO, and Section 1981 claims; against Samango, PHRA, PFPO, and Section 1981 claims; and against Hunter, a Section 1981 claim.

### A. The Carson Defendants' Motion

The Carson Defendants first contend that Plaintiff's Title VII, PHRA, and PFPO claims against Carco and Samango are time-barred for failure to exhaust administrative remedies. Next, they argue that Plaintiff fails to allege facts sufficiently suggestive of unlawful discrimination, necessitating dismissal of all claims against them.

#### 1. *Failure to Exhaust*

Prior to bringing suit under Title VII, the PHRA, and the PFPO, "a plaintiff must first exhaust all administrative remedies by filing a charge of discrimination (also referred to as an administrative complaint) with the Pennsylvania Human Relations Commission ("PHRC") or

EEOC." *See Hills v. Borough of Colwyn*, 978 F. Supp.2d 469, 478 (E.D. Pa. 2013); *Dixon v. Phila. Housing Auth.*, 43 F. Supp.2d 543, 545 (E.D. Pa. 1999) (Title VII claims require administrative exhaustion); *Richards v. Foulke Assocs., Inc.*, 151 F. Supp.2d 610, 616 (E.D. Pa. 2001) (PHRA and PFPO claims require administrative exhaustion). The Carson Defendants do not dispute that Plaintiff timely exhausted his administrative remedies as to Defendant Carson. Rather, they contend that Plaintiff's Title VII, PHRA, and PFPO claims must be dismissed as to Carco and Samango, because these Defendants were not named in Plaintiff's administrative complaint.

Generally, plaintiffs seeking relief under these statutes will be barred from bringing suit against parties not named in the charge of discrimination. *See Schafer v. Bd. of Pub. Educ.*, 903 F.2d 243, 251-52 (3d Cir. 1990). There is, however, "an exception when the unnamed party received notice and when there is a shared commonality of interest with the named party." *Id.* at 252. Moreover, "where a defendant is not named as a defendant in the caption of the administrative proceeding, but is named in the body of the complaint, that defendant has sufficient notice to satisfy the general rule." *Ford-Greene v. NHS, Inc.*, 106 F. Supp.3d 590, 606 (E.D. Pa. 2015) (quoting *McLaughlin v. Rose Tree Media Sch. Dist.*, 1 F. Supp.2d 476, 482 (E.D. Pa. 1998)). Where a plaintiff "describe[s] the conduct of [the defendant] in the factual statement accompanying her complaint," the defendant is considered on notice "that their conduct [is] being formally reviewed." *Dixon*, 43 F. Supp.2d at 616 (quoting *Kinnally v. Bell of Pa.*, 748 F. Supp. 1136, 1140 (E.D. Pa. 1990)).

In this case, only Carson was formally designated as a respondent in Plaintiff's administrative charge. Samango is, however, expressly named in the body of the charge, which describes Plaintiff's effort to contact him about the open tower crane operator positions.

4

Moreover, Samango filed a position statement with the EEOC, further indicating his awareness of Plaintiff's charge. Plaintiff has thus sufficiently exhausted his administrative remedies as to Samango.

Carco, on the other hand, is not mentioned in and did not otherwise respond to Plaintiff's EEOC filing. Thus, whether Plaintiff has exhausted his administrative remedies as to Carco depends on whether Carco had notice of the charge and shares a "commonality of interest" with Carson, the named party. *See Schafer*, 903 F.2d at 252. In this case, Plaintiff's Complaint is "devoid of facts that would allow the Court to conduct a meaningful review of whether the commonality of interest requirement has been met." *Owens v. Allegheny Valley Sch.*, 869 F. Supp.2d 653, 659 (W.D. Pa. 2012). He offers only one allegation suggestive of a "commonality of interest" between Carco and Carson: The two corporations share a corporate address. The Complaint contains no other substantive allegations regarding Carco's relationship with Carson or its involvement in the alleged discriminatory conduct. This single allegation does not support a plausible inference that these Defendants share a commonality of interest with respect to Plaintiff's EEOC proceedings. *See id.* Thus, Plaintiff's Title VII, PHRA, and PFPO claims will be dismissed as to Carco for failure to exhaust administrative remedies. Because Section 1981 claims do not have an exhaustion requirement, *see Cheney State Coll. Faculty v. Hufstedler*, 703 F.2d 732, 737 (3d Cir. 1982), this claim is not affected.

### 2. *Inference of Discrimination*

The Carson Defendants next argue that all of Plaintiff's claims must be dismissed for failure to state a claim. Claims of employment discrimination brought under Title VII, the PHRA, the PFPO, and Section 1981 are analyzed coextensively. *Joseph v. Cont'l Airlines, Inc.*, 126 F. Supp.2d 373, 376 n.3 (E.D. Pa. 2000) (Title VII, Section 1981, and PFPO claims are

"analyzed in the same manner"); *Doe v. Triangle Doughnuts, LLC*, 472 F. Supp.3d 115, 128 (E.D. Pa. 2020) (analysis under Title VII and the PHRA is identical).

To state a *prima facie* case of discrimination under Title VII, Plaintiff must allege that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and, (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination. *Darby v. Temple Univ.*, 216 F. Supp.3d 535, 541 (E.D. Pa. 2016) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). The Carson Defendants acknowledge that Plaintiff's allegations satisfy the first three elements of this analysis. They argue that dismissal is appropriate because Plaintiff fails to allege factual circumstances that prove the fourth element, that is, fails to allege facts that could give rise to an inference of discrimination.

Plaintiff need not, however, "establish a *prima facie* case in order to survive a motion to dismiss." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 788-89 (3d Cir. 2016). Indeed, the burden-shifting framework of *McDonnell Douglas*—which requires plaintiffs to first state a *prima facie* case of discrimination and then permits defendants to rebut that case with evidence that their conduct was legitimate—does not come into play on a motion to dismiss. *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021). At the pleading stage, Plaintiff need only set forth "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary [*prima facie*] elements." *Connelly*, 809 F.3d at 789. He meets this minimal burden.

Boiled down to its essence, Plaintiff's Complaint alleges the following: Plaintiff is Black; he is an experienced and certified tower crane operator with no accident history; he reached out several times to Defendants about open tower crane operator positions; he was not

6

provided with a written application for these positions; and, despite Plaintiff's repeated inquiries, these positions were eventually filled by two White men, both of whom were less experienced and less qualified than Plaintiff and one of whom had been the subject of work-related complaints.

Evidence that an employer hired less qualified candidates outside the plaintiff's protected class may support a finding of unlawful discrimination. *Martinez*, 986 F.3d at 267 (allegations that employer hired younger, less qualified, and less experienced individuals sufficient to overcome motion to dismiss age discrimination claim); *see also Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998) ("If a factfinder can conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate—something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture."). Favorably construing Plaintiff's allegations as true, it is plausible that his race "played either a motivating or determinative factor" in the decision not to hire him for a tower crane operator position. *See Connelly*, 809 F.3d at 788-89; *see also Mahan v. City of Philadelphia*, 296 F. Supp.3d 712, 719 (E.D. Pa. 2017) (denying motion to dismiss discrimination claim where female plaintiff alleged employer chose "less qualified male coworkers with less seniority" for various job positions over her); *Johnson v. Long Island Univ.*, 58 F. Supp.3d 211, 225 (E.D.N.Y. 2014) (African-American plaintiff who alleged that employment position was given to a less qualified individual outside his protected class "provide[d] enough detail to support an inference of discrimination" for failure to hire claim).

Defendants' arguments to the contrary are unpersuasive. First, they contend that their

failure to hire Plaintiff for a tower crane operator position could not have been motivated by unlawful discrimination because, according to Defendants, Plaintiff himself "admits that a Black tower crane operator was hired for the position he sought." While Plaintiff's Complaint does recognize that one African-American tower crane operator was employed at one of the jobsites, it does not allege that that person was hired for one of the positions Plaintiff sought. In any event, "an employer does not have to discriminate against all members of a class to illegally discriminate against a given member of that class." *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 321 (3d Cir. 2000); *see id.* ("[I]t is conceivable that an employer who harbors a discriminatory animus may nevertheless allow one or two females to advance for the sake of appearances."). Even if Defendants did employ one Black tower crane operator, it is still plausible that their decision to fill the positions sought by Plaintiff with allegedly less-qualified Caucasian men is indicative of unlawful discrimination.

Defendants next purport to offer various legitimate, nondiscriminatory justifications for their conduct. Specifically, they point to Plaintiff's allegation that one of the White men hired by Defendants was the son of the union hiring agent, and ask the Court to infer that this man was hired for nepotistic, rather than discriminatory, reasons. Defendants forget that at this stage, all reasonable inferences must be drawn in Plaintiff's favor. *See Tishman*, 760 F.3d at 302. While it could be inferred that Plaintiff was passed over due to nepotism, it is also plausible to infer, as Plaintiff would have it, that Defendants' decision to hire allegedly inferior White candidates was motivated by Plaintiff's race. *See Aka*, 156 F.3d at 1294. Defendants further assert that the positions Plaintiff sought were already filled by the time he applied and that Plaintiff had been employed by Carson in the past and was, during his employment, an unreliable worker who quit without notice. These considerations to the extent they are supported by the record may become

8

relevant at a later point in the proceedings, but they carry no weight in a motion to dismiss. *See Martinez*, 986 F.3d at 265-66; *Dreibelbis v. County of Berks*, 438 F. Supp.3d 304, 321 (E.D. Pa. 2020) (contentions of legitimate reasons for allegedly discriminatory conduct are "appropriately made either on a well-developed summary judgment record or at trial").

Finally, the Carson Defendants contend that even if Plaintiff sufficiently alleges unlawful discrimination for purposes of Title VII, he does not allege a Section 1981 claim, because Plaintiff does not plausibly allege that race was a "but for" cause of Defendants' actions. Under Title VII, a plaintiff may prove unlawful discrimination by showing that race was a "motivating factor" in the employer's adverse employment action. *See Comcast Corp. v. Nat'l Assoc. of African American-Owned Media*, --- U.S. ----, 140 S. Ct. 1009, 1017 (2020). Section 1981 claims, by contrast, are subject to a heightened causation standard: To succeed on such claims, "a plaintiff must initially plead and ultimately prove that, but for race, [he] would not have suffered the loss of a legally protected right." *Id.* at 1019. Plaintiff's allegations meet even this "but for" standard. Again, he alleges that he was qualified for the position he sought but was passed over in favor of less-qualified White men, one of whom had operated fewer cranes than Plaintiff and had been the subject of work-related complaints. It is plausible, at this stage of the proceedings, that but for his race, Plaintiff would have been hired for one of these positions.

This does not mean, however, that Plaintiff alleges a plausible discrimination claim against each of the Carson Defendants. Although the Complaint contains factual allegations sufficient to give Carson and Samango fair notice of their allegedly discriminatory conduct, *see Gavura v. Pa. State House of Representatives*, 55 F. App'x 60, 64 (3d Cir. 2002), Plaintiff fails to plead facts alleging that Carco engaged in any conduct at all, let alone discriminatory conduct. Thus, the remaining claim against Carco—Plaintiff's Section 1981 claim—will also be

9

dismissed.

### B. Hunter's Motion

Only a Section 1981 claim is alleged against Hunter. In its Motion, Hunter contends that Plaintiff fails to allege facts sufficient to suggest a prospective contractual relationship between himself and Hunter, a threshold element of his Section 1981 claim.

Unlike Title VII, which prohibits employers from discriminating on the basis of a protected characteristic, *see* 42 U.S.C. § 2000e-2(a)(1), Section 1981 applies specifically to racial discrimination in the making and enforcement of contracts, *see Saint-Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987) ("Although § 1981 does not itself use the word 'race,' the Court has construed the section to forbid all 'racial' discrimination in the making of private as well as public contracts."). Thus, to come within the scope of the statute, a plaintiff must "initially identify an impaired 'contractual relationship' under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (citation omitted). This contractual relationship may be prospective: Section 1981 "offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship." *Id.*; *McClease v. R.R. Donnelley & Sons Co.*, 226 F. Supp.2d 695, 699 (E.D. Pa. 2002) (Section 1981 "prohibits, when based on race, the refusal to enter into a contract with someone" (quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 176-77 (1989))). At issue here is whether Plaintiff plausibly alleges that Hunter refused to contract with him because of his race.

The Complaint contains only the following facts about Hunter: Hunter is a corporation; it contracted with Carson for the purpose of constructing skyscrapers; it employed Gerald Green as a Senior Project Manager; Green informed Plaintiff of an open tower crane operator position

with Carson; Green told Plaintiff to contact Carson's owner, Samango, about the position; and then, upon Plaintiff following up, Green explained that "we can't force [Samango] to hire who we want." Plaintiff does not allege that he attempted to apply for an employment position with Hunter, or that he was denied employment by Hunter. Because the only employment alleged in the Complaint—and thus the only job Plaintiff could have been rejected for—was with Carson, the Complaint does not plausibly allege a Section 1981 claim as to Hunter.

Plaintiff nevertheless contends that Hunter may be liable under joint employer or common-law agency theories of liability. "[A] joint employment relationship may exist when 'one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer.'" *Myers v. Garfield & Johnson Enters., Inc.*, 679 F. Supp.2d 598, 607 (E.D. Pa. 2010) (quoting *NLRB v. Browning-Ferris Indus. of Pa.*, 691 F.2d 1117, 1123 (3d Cir. 1982)). Factors relevant to determining whether a joint employment relationship exists are, *inter alia*:

> (1) the entity's "authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours"; (2) its "day-to-day supervision of employees, including employee discipline"; and (3) its "control of employee records, including payroll, insurance, taxes, and the like."

*Plaso v. IJKG, LLC*, 553 F. App'x 199, 204-05 (3d Cir. 2014)). Because "the precise contours of an employment relationship can only be established by a careful factual inquiry," the joint employer inquiry is often best left for after discovery. *Graves v. Lowery*, 117 F.3d 723, 729 (3d Cir. 1997)).

In this case, however, discovery is unnecessary. Plaintiff's allegations fail to raise a reasonable expectation that discovery will reveal evidence that Carson and Hunter were joint

11

employers for purposes of Plaintiff's discrimination claim. The only factual allegations relevant to Plaintiff's joint employer theory are that Hunter contracted with Carson and employed a Senior Project Manager, Gerald Green, at one of the jobsites. Plaintiff does not allege facts suggesting that Hunter had any control over or played any role in Carson's employment decisions. *See, e.g.*, *Doe*, --- F. Supp.3d at ----, 2020 WL 7133520, at *4 (general allegations that defendant "maintained control over [the primary employer's] daily operations" insufficient to allege plausible joint employer relationship); *Cassidy v. CONSOL Energy, Inc.*, 2021 WL 1224380, at *2 (W.D. Pa. Apr. 1, 2021) (no plausible joint employer relationship where complaint did "not contain factual allegations regarding CONSOL's authority over such employees, its supervision of such employees, or its control of employee records"). In fact, Plaintiff alleges Green told him he had no say in whether to hire Plaintiff for a tower crane operator position. He also expressly alleges that the less-qualified White men hired for the tower crane operator position sought by Plaintiff were hired by Carson, not Hunter. With no allegations suggesting that Hunter had any control over the contractual relationship at issue, Plaintiff's Section 1981 claim against Hunter will be dismissed.

### C. Leave to Amend

In sum, while Plaintiff's claims against Carson and Samango will proceed, his claims against Carco and Hunter will be dismissed. The only remaining question is whether Plaintiff should be given leave to amend his Complaint as to these latter two Defendants. Leave to amend should be given where justice so requires. Fed. R. Civ. P. 15(a)(2). "Leave to amend may be denied, however, if amendment would be futile," that is, "if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Although Plaintiff submits a proposed second

amended complaint as an exhibit to his opposition briefing, this document identifies no additional factual allegations against Carco and Hunter that might cure the deficiencies in his operative Complaint, and the Court can see none.  *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002).  His claims against these Defendants will therefore be dismissed with prejudice.

    An appropriate order follows.

**April 20, 2021**                                 **BY THE COURT:**

                                                      /s/Wendy Beetlestone, J.

                                                      **WENDY BEETLESTONE, J.**